HOULAHAN, Respondent, vs. CLARK and others, Appellants,
and JENNEJOHN and others, Respondents.

*March 20 — April 9, 1901.*

*Contracts: Performance: Agency: Mechanics' liens: Subcontractors.*

1. Defendant C. engaged plaintiff to drive piling and place a building
thereon, so that it might be used as a boat house, and instructed
him to place the piling and building in line with a certain dock.
Plaintiff placed the piling and building otherwise, and testified that

H., who claimed to represent C., instructed him to place them as
he did. H. testified that he repeatedly told plaintiff defendant
wanted the building on line with said dock. It was not shown
that H. had any authority to change the contract, though it ap-
peared he had acted for C. in some matters. *Held*, that plaintiff
was not justified in departing from the contract and could not re-
cover thereunder.

2. Where one who contracted to drive piling in a lake and place a
building thereon is not entitled to recover because he has not placed
the piling and building as agreed, those claiming as subcontract-
ors for driving the piling cannot recover against the owner.

APPEAL from a judgment of the circuit court for Wauke-
sha county: JAMES J. DICK, Circuit Judge. *Reversed.*

For the appellants there was a brief by *Armin & Waite*,
and a supplemental brief and oral argument by *C. E. Armin*.

*D. J. Hemlock*, for the respondent *Houlahan*.

*V. H. Tichenor*, for the respondents *Jennejohn* and others.

CASSODAY, C. J.   This action was commenced July 23,
1898, by *Patrick Houlahan*, as contractor, against *W. C.
Clark, Helen N. Richmond*, and *Oriola M. Anderson*, as
owners and tenants in common, and four others, as subcon-
tractors, to enforce a lien for $272 for work, labor, and serv-
ices in straightening and removing a building, driving and
straightening piles, on the premises described adjacent to
the shore of Lake Pewaukee, between December 9, 1897,
and March 7, 1898.   The four defendants claiming as sub-
contractors severally answered, setting up their respective
claims as such.   The defendants *Richmond* and *Anderson*
severally answered by way of denials, and a disclaimer of
any knowledge or information sufficient to form a belief in
respect to any of the allegations of the complaint.   The de-
fendant *Clark* separately answered to the effect that he was
the owner of the undivided one-third of the premises de-
scribed, and that *Richmond* and *Anderson* each owned the
undivided third thereof; that in the fall of 1897 he obtained

permission from his said cotenants to remove the building onto piles to be driven for that purpose adjacent to the shore on the premises described, and abutting thereon, and reconstruct the same for the purposes of a boathouse; that, aside from such permission, neither *Richmond* nor *Anderson* had any part or parcel in the contract made by him with the plaintiff, and that they had no knowledge thereof; that the plaintiff was to procure some one to drive the piles in the bed of the lake adjacent to the shore for supporting the building when moved, to be paid for by the defendant; that he pointed out to the plaintiff where the piles were to be driven and the building to be located, to which he agreed, and that the plaintiff was to place the building upon the piles as so agreed upon, and that the defendant was to pay the plaintiff for so removing and placing the building $75; that the plaintiff carelessly and negligently directed the driving of the piles, and did not have the same driven at the place agreed upon, and did not place the building at the place agreed upon, but did set the same in such manner as to render the building useless, and so that it did not conform to the portion of the lake which he had caused to be dredged, so as to be used in connection with such building when so located. The answer also alleged that some of the claims of the so-called subcontractors were for the same matters covered by the plaintiff's claims, and also reasons why the others should not be allowed. At the conclusion of the trial the court made findings of fact and conclusions of law, wherein it was found that the plaintiff was entitled to judgment for $228.25, with interest, as therein stated, and that the several subcontractors were entitled to judgment with interest, as therein stated, and that such claims were liens upon the respective shares of the premises owned by *Richmond* and *Anderson,* as well as *Clark.* From the judgment entered thereon accordingly, the defendants *Clark, Richmond,* and *Anderson* bring this appeal.

The plaintiff, as a witness in his own behalf, testified to the effect that he first talked with *Clark* about removing the building in August, 1897; that two or three weeks afterwards, and in September, 1897, he had his second talk with him, and that *Clark* then finally agreed to give him $75 for removing the building; that the stakes had not then been driven along where the dredging had been done; that *Clark* then told him that he wanted the building "in line with Zaun's dock;" that he did not want the building "to go out into the lake," because he did not want to fill in; that he wanted to keep it back close to the shore; that he then knew that *Clark* was going away,— that he told him so; that he did not see *Clark* again after that conversation in September, 1897, until June, 1898; that *Clark* trusted him to see that the building was properly set, and the piles properly driven, as he knew he would not be there; that there was no agreement as to what *Clark* would give for driving the piles; that he understood that it was his duty to see that the piles were put in right,— driven down tight into the bottom of the lake; that he charged $2 per day for sixteen days to "see that the piles were properly driven;" that he "superintended the driving of them,"— the piles the building was to rest upon; that he was present during all the time the piles were being driven; that they were driven according to directions given to the defendant *Yennie*,— placed according to those directions; that when he made the contract with *Yennie* he understood that *Clark* was to pay fifty cents and seventy-five cents apiece for driving such piles; that he "acted as superintendent in driving them,— acted for *Clark;*" that the piles were set by cutting a hole through the ice for each pile, and driving it through; that Husby told him to stop driving the piles until he could fill in with gravel; that Husby requested him to change the stakes; that they were not right with the dredged channel for the boats to go in, and that he (the plaintiff) should change them; that it would

have been just as easy for him to put it in the other way but that, if it was put in as *Clark* first mentioned, it would have been useless to him; that *Clark* told him not to let the building go away from the shore; that he did not want the filling, and that he told him it was impossible. At the time of making the contract in September, 1897, the parties necessarily contemplated that the piles should be driven with reference to the location of the building as then designated by *Clark*, and the dredging which had previously been done. The building was to be so located with reference to the shore, and so as to be "in line with Zaun's dock." The plaintiff was to drive, or superintend the driving of, the piles; and, so far as then contemplated, no one else was to have any direction of such driving. It is conceded that the building constructed was not "in line with Zaun's dock," but is very much out of line with that dock. The only excuse for locating the building entirely different than agreed upon is that the change was made by direction of one Husby, who claimed to represent *Clark*. But we fail to find any evidence in the record that Husby had any authority to so change the contract. The most we have is that he had acted for *Clark* in certain matters. *Clark* testified to the effect that the plaintiff agreed to drive the piles for $1 each, and to set the building on such piles for $75, and such sums were to be in full payment for all services and material; that he first saw the alleged completed work about June 1, 1898; that he then objected to the work, and refused to pay until he completed the same according to the contract; that when the contract was made he drove the corner stakes both on the land side and in the water; and that the building was to be set parallel with Zaun's dock; that the plaintiff set the building cornerwise, and not parallel with Zaun's dock, so that it spoiled his bathing place, and made it very difficult to get his steam yacht in and out of the building; that he denied that he ever sent directions to any one as to

the location of the building, but left the matter entirely with the plaintiff, and relied upon him to fulfill his contract; that he never gave any one except the plaintiff any direction as to the location of the building, in writing or otherwise. *Clark's* testimony is corroborated by Husby's, who repeatedly told the plaintiff that *Clark* wanted the building "parallel with Zaun's dock." We must hold, upon the great preponderance of the evidence, if not the uncontradicted evidence, that the plaintiff did not drive the piles nor locate the building as he had agreed, and hence had no right to recover therefor. It follows that the persons who claim as subcontractors for driving piles under the building as mislocated by the plaintiff have no claim upon which they can recover from *Clark.* As to the piles driven out in the body of the lake, we fail to find in the record any contract or evidence sufficient to prove a contract which would authorize a recovery from *Clark*, much less the enforcement of a lien on the building and shore. Of course, no lien could be acquired upon the bed of the lake, which belongs to the state.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to dismiss the action.